## JASPER MERRITT *v.* THE STATE.

1. CONTINUANCE.—On hearing a defendant's application for a first continuance, on account of absent witnesses, the court below admitted the unsworn statement of the sheriff to show that they were absent by defendant's procurement. *Held,* that the unsworn statement was improperly entertained, and, the application being in strict compliance with the statute, the defendant was entitled to the continuance as a legal right.

2. PRACTICE—ORDER OF TRIAL.—All cases on the docket preceding the defendant's having been either disposed of or set for subsequent days of the term, he was not entitled to have his trial postponed until after the trial of the cases so set.

3. CHARGE OF THE COURT.—An instruction to the jury is not perfectly unexceptionable unless the judge confines himself to the exposition of the law applicable to the case, without expressing or intimating any opinion as to the weight of the evidence, or as to the credibility of statements made by the accused or by the witnesses.

4. SAME, ON WEIGHT OF EVIDENCE.—To instruct that a defendant's explanation of his possession of stolen property was, if reasonable and consistent, a circumstance in his favor, but, if unreasonable and false, a circumstance against him, may, as in this case, be a charge on the weight of evidence.

5. EVIDENCE.—To warrant or sustain a conviction there must be evidence sufficient to prove that the offense was committed, and also to inculpate the defendant in its commission. See evidence held insufficient to sustain a conviction for theft of a horse.

APPEAL from the District Court of Medina.    Tried below before the Hon. T. M. PASCHAL.·

The indictment was filed at the October term, 1876, and charged the appellant with the theft of a bay gelding, of the value of $30, the property of Henry Hamilton, on June 10, 1876.

The defendant sued out attachments for K. Merritt, a resident of Bexar county, and for Dan Merritt, a resident of Blanco county. The returns showed that the former was attached, but escaped from the sheriff, and that the other could not be found.

The accused applied for a continuance in consequence of their absence, alleging that he could prove by them that he

12

bought and paid for the gelding, obtaining it "from the reputed owner, and the one whom defendant believed to have a right to sell said gelding;" that neither of the witnesses was absent by the procurement or with the consent of the defendant, and that he expected to have their attendance at the next term; that the application was not made for delay, etc.

The application was overruled, and two bills of exceptions were taken to the ruling.    Certifying the first bill, the judge explains "that it was brought to the attention of the court that the witness K. Merrit, who was the father of the defendant, and being one of the witnesses on account of whose testimony the application was made, had been attached by defendant, and ran off and escaped from custody of the sheriff while on the way from San Antonio to Castroville; and, further, that a man answering the description of defendant's counsel, in a previous trial for this same offense in another county, had told the deputy sheriff in the presence of said witness, when he served the attachment, that he had no right to execute the writ out of Medina county, and that witness was not bound to go and testify. These facts were stated to the court by the officer who served the writ, in open court, on inquiry by the court when the application was made, and suggestion of them made by the county attorney, and justified in the mind of the court a strong presumption of absence by procurement or consent; and the facts appeared also not to be material which, it was alleged, witness would swear to."

The other bill of exceptions to the refusal of the continuance specially complained that the court, pending the motion, called the deputy sheriff to make his verbal statement relative to the escape of K. Merritt, "which the said deputy proceeded to do without being sworn." In certifying this bill the judge referred to the explanation given by him in the first bill, and added that the attention of the court was

not called to the fact that the deputy sheriff, when interrogated, had not been sworn.

T. D. Laxton, the first witness for the state, testified that, in June, 1874, a small, bay gelding, with a black mane and tail, a sore back, and branded on the thigh with a Spanish brand, was brought by the defendant to witness' place, about five miles above the city of Austin, and some seventy-five miles from Bandera. The pony was a pacer, and witness bought him from the defendant, and gave $10 or $12 worth of other property in payment for him. Witness kept the pony three or four days, and then sold him for $8. Defendant said he traded for the pony with a German at Quihi, but did not say how much he gave for him. Witness thinks there was no white in the face of the animal, and only the Spanish brand.

Henry Hamilton, for the state, swore that, in May or June, 1874, on the Julian creek, a mile and a-half south of Bandera, he hobbled out a bay pony, which was a natural pacer, and had a sore back. The pony was hobbled with a piece of grass rope. It had a Spanish brand on the thigh, and T L branded dimly on the shoulder. It had some white in its face, and was a gelding worth about $30. It belonged to witness, and he never authorized the defendant to take it up or to dispose of it in any way. Witness told Elam and Jones to look after the pony, and authorized them to gather all horses in the same brand. Witness knows the defendant, but has no personal knowledge that the pony was stolen by him.

J. J. Jones, a witness for the state, knows the defendant, and, in June, 1874, saw him with a bay gelding-pony, on Cypress creek, in Medina county. The pony was a pacer, had a sore back, and witness thinks it had a Spanish brand. Defendant told witness that he had taken the pony up as an estray, and that it was hobbled with a pair of rope hobbles, and asked witness and his companion if they knew any-

thing about the pony. Witness asked him if the pony had the T L brand on it, and he said not. Mr. Hamilton had asked witness and his companion, who were driving stock, to look out for his horses.

No testimony appears to have been introduced on the part of the accused.

The jury found a verdict of guilty, and assessed the punishment at confinement in the penitentiary for five years. A new trial was refused.

No brief for the appellant.

*George McCormick*, Assistant Attorney General, for the State.

ECTOR, P. J.   The errors assigned are:

"1st. The court erred in overruling defendant's application for a continuance.

"2d. The court erred in the various rulings objected to, as shown by bills of exception, Nos. 1, 2, 3, 4, and 5 of the record herein.

"3d. The court erred in charges 4 and 5 given to the jury.

"5th. The court erred in refusing charges asked by defendant."

We believe that the defendant's application for a continuance was in strict compliance with the requirements of the statute for a first application, and that he was entitled to the continuance as a legal right. So 'far as the record shows, the defendant had never before continued the case.

The prosecution attempted to show that the bay gelding which the defendant is charged in the indictment to have stolen was the property of Henry Hamilton; that it was fraudulently taken by the defendant from its accustomed range, as charged in the indictment, and was afterwards sold by the defendant to the state's witness, T. D. Laxton.

It was improper to admit the statements of the sheriff of Medina county, not under oath, on the hearing of the application for a continuance, to show that the defendant's witnesses named in his affidavit were absent by his procurement.

At common law, when there was reason to suspect that the application of a defendant in a criminal case for a continuance was made for delay, counter-affidavits were admissible to destroy the force of the defendant's affidavit, by showing the want of proper diligence, and also the improbability of obtaining the attendance of the witness at the next trial; but this rule at the common law was never so relaxed that the statements of an officer of the court, or anybody else, not under oath, of facts within his knowledge were held admissible to destroy the force of the common affidavit.

If the horse taken up by the defendant belonged to Hamilton, it was certainly material to show that the defendant purchased the animal in good faith from a person whom he believed to be the owner of it. The defendant excepted to the ruling of the court on his motion for a continuance.

All the cases on the docket preceding the one at bar had been disposed of, or set for trial on some ensuing day of the term, and the defendant had no right to complain at the order in which his case was called for trial. Therefore his 2d bill of exceptions is not well taken.

We find no error committed by the court as complained of by the defendant in his 3d and 4th bills of exception.

In determining whether the court erred in the 4th and 5th charges given to the jury, it is necessary that we shall copy, in connection with them, the 3d instruction also. They are as follows:

" 3d. If, from the evidence before you, you are are satisfied, beyond a reasonable doubt, that the defendant, Jasper Merritt, did, on or about the time charged in the indictment, or at any time within five years previous to the filing of the

indictment, to wit, on the 3d day of October, A. D. 1876, fraudulently take from the possession of Henry Hamilton, or from that of some one holding the same for him, the bay gelding charged in the indictment, and that the same was the property of Henry Hamilton, without his consent, with intent to deprive him of the value of the same, and to appropriate it to the use or benefit of the said Jasper Merritt, you will find the defendant guilty as charged, and assess the penalty at imprisonment in the penitentiary for a term of not less than five nor more than fifteen years.

" 4th. Unless so satisfied of any of the foregoing facts, you will acquit him.

" 5th. If you are so satisfied from the evidence that the animal which the defendant was seen with by the witness Jones, on Cypress creek, was the same which he traded to witness Laxton, near Austin, and, further, that it was the same animal which Henry Hamilton testifies he hobbled on the Julian, and was lost there, you are at liberty to consider the several statements made by the defendant as to the manner in which he came in possession of it, in order to enable you to arrive at the guilt or innocence of the defendant; and, if said statements appear to be reasonable and consistent, it is a circumstance in his favor; but, if the said statements are unreasonable and false, it is a circumstance against him."

The district judge who presided at the trial evidently meant, in the 4th instruction, to charge the jury that, " unless so satisfied of *every one* of the foregoing facts, you will acquit him." When we consider the circumstances under which the district judge prepares his charges, we can well understand how it is that he does not always express himself as clearly as he desires or should do.

· The 5th instruction given to the jury is objectionable as being a charge on the weight of evidence. A charge to a jury is perfectly unexceptionable only when the judge con-

fines himself to the duty of setting forth the law applicable to the case, without expressing or intimating any opinion as to the weight of the evidence, or the credibility of the statements made by the party accused or by the witnesses. *Ross* v. *The State*, 29 Taxas, 500.

The able jurist, Chief Justice Roberts, in the case of *Brown* v. *The State*, 23 Texas, 201, says: " If the court should undertake to instruct, or even advise, the jury as to the proper process of reasoning upon the facts, or as to the precautionary considerations to be borne in mind in coming to a proper conclusion upon the facts, by a dissertation, however it may be shaped, upon the nature and effect of evidence, his opinion upon the weight of the evidence may be infused into his charge upon the subject, and really influence the jury, by that mode of communicating it, as effectually, and sometimes more so, than by a direct expression of it." We cannot say that the 5th instruction given by the court to the jury did not influence the jury in finding their verdict.

We do not believe that the evidence is sufficient to warrant the verdict of the jury. Before a jury is authorized to find a defendant guilty in any criminal case, and especially in one which deprives him of his liberty, subjecting him at the same time to such ignominious punishment, there must be evidence sufficient to prove that an offense has been committed, and to identify the defendant with the commission of it, as charged in the indictment.

The Code prescribes as one of the grounds for a new trial that " the verdict is contrary to the law and the evidence," and also that the " supreme court may reverse the judgment in a criminal action as well upon the law as upon the facts ; but, when a cause is reversed for the reason that the verdict is contrary to the weight of the evidence, the same shall, in all cases, be remanded for a new trial." Pasc. Dig., Arts. 3137, 3210.

As a last resort the duty devolves upon us to determine whether or not there has been adduced before the jury a sufficient amount of legal evidence to allow the judgment to stand and become a precedent in the adjudication of other offenses under the law.

The judgment of the district court is reversed and the cause remanded.

*Reversed and remanded.*